1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  CRAIG S. LEWIS,                ) NO. CV 09-2078 SS
                                   )
12              Plaintiff,         )
                                   )
13          v.                     ) **MEMORANDUM DECISION AND ORDER**
                                   )
14  MICHAEL J. ASTRUE,             )
    Commissioner of the Social     )
15  Security Administration,       )
                                   )
16              Defendant.         )
    ───────────────────────────────)

17

18                      **I.**

19                  **INTRODUCTION**

20

21      Plaintiff Craig S. Lewis ("Plaintiff") brings this action seeking

22  an order to overturn the decision of the Commissioner of the Social

23  Security Administration ("Commissioner" or the "Agency") denying his

24  application for Supplemental Security Income ("SSI") benefits and to

25  award benefits.  In the alternative, Plaintiff seeks remand for further

26  proceedings.  The parties consented, pursuant to 28 U.S.C. § 636(c), to

27  the jurisdiction of the undersigned United States Magistrate Judge.

28  This matter is before the Court on the parties' Joint Stipulation ("Jt.

Stip."), filed on November 16, 2009.  The Court has jurisdiction to review the final decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g); 1383(c).  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

On March 20, 2006, Plaintiff filed an application for SSI benefits alleging a disability onset date of March 1, 1999.  (AR 51-54).  The claim was initially denied on July 25, 2006.  (AR 24).  On January 22, 2007, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ").  (Id.).  Plaintiff appeared and testified at the February 19, 2008 hearing.  (AR 144).  On March 4, 2008, the ALJ decided that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act.  (AR 21,31).  On March 24, 2008, Plaintiff filed a Request for Review of Hearing.  (AR 14).  On January 23, 2009, the Appeals Council denied Plaintiff's Request for Review. (AR 8-10).  Plaintiff then commenced this civil action, filing a complaint for review of the ALJ's decision on March 25, 2009.

## III.

### FACTUAL BACKGROUND

A.   **Background Information**

Plaintiff was born August 26, 1963.  (AR 51).  He is a United States citizen, completed school through eleventh grade, and now lives

with his mother.  (AR 51, 105).  Plaintiff claims that he is unable to work due to a childhood injury that necessitated inserting metal plates in his side and his head.  (AR 75, 149-52).  He contends that the metal plates cause seizures, which make it difficult for him to remember fully, to concentrate, and to follow directions.  (AR 75, 118, 148-52).  The first seizure, and alleged onset of Plaintiff's disability, occurred on March 1, 1999.  (AR 147).

Plaintiff testified that he enjoys watching television and doing puzzles from a puzzle book on a daily basis.  (AR 94).  At some point, he spent five months shoveling sand over oil spills.  (AR 148).  He claims that he was fired from that job after suffering a seizure.  (Id.).  Subsequent to his onset date of March 1, 1999, Plaintiff has worked for his mother, providing in-home care.  (AR 28-29, 75).  However, Plaintiff stated that he does not work for more than an hour a day.[1]  (AR 147).  Plaintiff's earnings record shows that he earned $9463 in 2004, $8102 in 2005, and $6616 in 2006. (AR 59, 147).  The State presumably pays these wages to Plaintiff for being his mother's caretaker.  (AR 147).

\\

\\

\\

---

[1]   The ALJ did not find this testimony entirely convincing.  (See AR 28 ("[S]uch an allegation seems doubtful in consideration of the likely duties involved.  Further, the claimant's ability to perform such work . . . casts a measure of doubt upon the credibility of his complains of disability throughout the period at issue.")); see also infra p. 19.

**B.    Relevant Medical History**

    **1.    Consultative Physicians**

At the request of the Department of Social Services, three doctors examined Plaintiff.   Neurologist Sarah L. Maze, M.D., performed a neurological assessment and submitted her report on July 5, 2006.[2] (See AR 118).  She reported that Plaintiff has not had any recent trauma, but was in a car accident when he was seven.   He experienced significant head trauma in that accident.  (Id.).  Plaintiff remained unconscious for two weeks and received a plate in his head and side.  (AR 118, 129). Plaintiff's first seizure was in 1999.  (AR 118).  However, he does not take any seizure medications.  (Id.).  Plaintiff's mother told Dr. Maze that Plaintiff sometimes stares without response for up to twenty seconds.  (Id.).  Dr. Maze concluded, "Mr. Lewis is having lapses in alertness and this probably represents complex partial seizures.  He is precluded from working at heights, around dangerous machinery, around unprotected water, or operating a motor vehicle."  (AR 121).

---

[2]    The record contains no evidence of a treating physician nor a treating psychologist or psychiatrist.  The record does not contain past medical records.   The only medical records available are those of the examining physicians and psychologist.  (See AR 118-43; see also AR 116-117 (showing an unsuccessful attempt to obtain from Harbor/UCLA Medical Center any record of outpatient notes, psychological tests, psychiatric consultations, visual acuity tests, or speech and language evaluations)).  The hospital returned the form, noting, "We do not have the information requested."   (AR 117).   On Plaintiff's Disability Report-Appeal, he identified a Dr. Aguolu, whom he saw in March 2007 for headache pain.   (AR 109-10).   Plaintiff reported that Dr. Aguolu recommended Tylenol. (AR 110).  However, there is no other evidence about Dr. Aguolu.

Dr. M.E. Bayar completed a Physical RFC Assessment of Plaintiff, submitted on July 21, 2006. (AR 123-28). In this assessment, Dr. Bayar relied on her own observations as well as Dr. Maze's neurological report. (See AR 128). Dr. Bayar noted that Plaintiff's "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be partially credible," and that "[t]he findings specified within this RFC assessment are more consistent with the appropriate medical findings and the overall evidence in the file than the allegations made by [Plaintiff]." (Id.).

Psychologist Jeanette K. Townsend, Ph.D., examined Plaintiff on July 17, 2007. (AR 133-143). Dr. Townsend evaluated different categories of Plaintiff's mental limitations using a scale of "none," "slightly limited," "moderately limited," and "markedly limited." Only "markedly limited" is defined as seriously affecting one's ability to function in the work environment. (AR 133).

Dr. Townsend's preliminary report contained the following relevant observations. Plaintiff is "moderately limited" in his ability to understand and remember detailed instructions. (AR 134). Plaintiff is "moderately limited" in his ability to work with sustained concentration for extended periods of time and complete a normal work-day and work-week without interruptions from psychologically based symptoms. He may also require an unreasonable number and length of rest periods. (AR 135). Plaintiff's ability to interact socially is "slightly limited" with respect to the general public only. (Id.). Otherwise, he is capable of asking questions, accepting instructions, maintaining

socially acceptable behavior and cleanliness, and interacting with coworkers. (AR 135-36). Plaintiff is "moderately limited" in his ability to travel to unfamiliar places or to use public transportation, and in his ability to set realistic goals or make plans independently of others. (AR 137).

Dr. Townsend's narrative Summary Report, submitted on August 29, 2007, concluded: "From the cognitive and psychiatric point of view, [Plaintiff] would be able to do a simple repetitive tasks and complete a full day's work in a job which does not involve time pressure where speed is not required." (AR 143). Dr. Townsend also determined that Plaintiff has a depressive disorder and borderline intellectual functioning. (AR 142-43).

## 2. Plaintiff's Testimony Regarding His Medical History

Plaintiff complains of occasional seizures since 1999. (AR 87). The last seizure Plaintiff remembers experiencing was in 2000. (Id.). Without taking any medication to prevent seizures, Plaintiff has nevertheless been seizure-free since 2000. (AR 150). Plaintiff describes the pre-2000 seizures as having caused him to lose consciousness, have convulsions, bite his tongue, and lose bladder control. (Id.). There are no medical records pertaining to Plaintiff's seizures and he is not taking any prescribed seizure medication.[3] (AR 88). Plaintiff did not produce any witnesses to his past seizures, but

_____

[3] In his Disability Report, Plaintiff answered that he had an EEG and MRI/CT Scan at Harbor UCLA Medical Center, but there is no documentation. (AR 77). See also supra note 2 and accompanying text.

his mother did tell Dr. Maze that Plaintiff sometimes "just stares off" for about twenty seconds.  (AR 89).

The plates in the right side of Plaintiff's head and body cause him pain.  (AR 115).  Plaintiff occasionally has trouble sleeping due to pain in his side.  (AR 91).  When this happens, he testified that he takes his mother's sleeping pills.  (AR 99).  Plaintiff also complains of headaches.  (AR 107).  He takes Tylenol III (Codeine), Advil, or Motrin for the headaches. (AR 115, 153).  Plaintiff obtains the Codeine from either his mother or brother, both of whom have prescriptions.  (AR 153).

At the hearing, Plaintiff did not testify that he is depressed or has psychological problems that prevent him from working.  (See AR 146-161).  He did mention to Dr. Townsend that he sometimes feels unhappy and that "a lot of people be stressing me that's why I stay to myself." (AR 139).  However, Plaintiff's reports and testimony were chiefly about how seizures, headaches, and pain impacted his ability to work.  (See supra 3 and accompanying text).  Indeed, where Plaintiff was asked "[W]hat's your biggest problem now do you think that's keeping you from working?"  Plaintiff responded, "The pain, the headaches, the pain in the sides and sometimes off and on dizzy spells."  (AR 155).

C.    **Vocational Expert's Testimony**

At Plaintiff's February 19, 2008 hearing, the ALJ examined vocational expert ("VE") Freeman Leeth.  (AR 155-61).  The ALJ posed a two-part hypothetical to Mr. Leeth.  (See id.).  The hypothetical

involved an individual of the same age, education, risk of seizure, and prior work experience as Plaintiff. (AR 156). Adopting Dr. Townsend's narrative report, the first part of the ALJ's hypothetical assumed that the individual could perform "simple, repetitive tasks that do not require time pressure where speed . . . is not required." (Id.). The VE responded that there are some sorter positions that would be regarded as light and unskilled, as well as inspector and packager positions, that an individual with the hypothetical's limitations could perform. (Id.). Sorter positions number 2000 in the local economy and 40,000 in the national economy. (Id.). Inspector positions number 3000 in the local economy and 60,000 in the national economy. (Id.). Packager positions number 1000 in the local economy and 20,000 in the national economy. (AR 156).

The second part of the ALJ's hypothetical dealt specifically with the limitation described by Dr. Townsend regarding "no time pressure where speed is required." (AR 157). The VE confirmed that each potential job would have some minimum level of acceptable performance. (Id.). However, the VE testified that the "acceptable level of performance" was not necessarily a rapid, high-pressure speed. (Id.).

On cross examination, Plaintiff's counsel posed a hypothetical containing a selection of specific limitations taken from Dr. Townsend's observational report, rather than her final mental assessment from the

\\
\\
\\
\\

8

Summary Report.[4]  (AR 159; <u>see also</u> AR 139).  The VE responded that the collection of limitations specifically enumerated by Plaintiff's counsel did not amount to impairments that would preclude an individual's ability to function.  (AR 160).  However, the VE did believe that such moderate limitations would cause difficulty in performing the jobs.[5]  (<u>Id.</u>).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him

---

[4]   Plaintiff's counsel posed the following question:

This individual is going to be moderately limited in a number of categories . . . And they're moderately limited in their ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods of time, to complete a normal work week, workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  And to travel in unfamiliar places or use public transportation and to set realistic goals or make plans independently of others.  If those, those activities are moderately limited is that going to affect these jobs that you cited?

(AR 159-60).

[5]   It is notable that the VE never said that such limitations would make the jobs impossible to perform at a satisfactory level.  He merely agreed that the limitations would make it more "difficult."  (AR 160).

9

from engaging in substantial gainful activity[6] and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

---

    [6]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(4)   Is the claimant capable of performing her past work?  If
          so, the claimant is found not disabled.  If not, proceed
          to step five.

(5)   Is the claimant able to do any other work?  If not, the
          claimant is found disabled.  If so, the claimant is
          found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1),
416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th
Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets his burden of
establishing an inability to perform past work, the Commissioner must
show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's residual functional capacity ("RFC"),[7] age, education, and
work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may
do so by the testimony of a VE or by reference to the Medical-Vocational
Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2
(commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157,

---

[7]   Residual functional capacity is "the most [one] can still do
despite [one's] limitations" and represents an assessment "based on all
the relevant evidence in [one's] case record."  20 C.F.R. §§
404.1545(a), 416.945(a).

1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

At step one, the ALJ accepted Plaintiff's assertion that he has not engaged in substantial gainful activity since he filed for disability benefits on March 20, 2006.  (AR 26).   Plaintiff testified at the February hearing that he had worked as a home attendant, caring for his mother, subsequent to the 1999 alleged onset date of his disability.  (See AR 146-48).  There is also evidence that Plaintiff worked briefly at a job which required shoveling sand.  (AR 147).  The record reflects income reported by Plaintiff in 2004, 2005, and 2006.  (AR 60).  As a whole, however, the ALJ determined that "the record does not clearly support a finding of gainful activity" as of Plaintiff's filing date. (AR 26).

At step two, the ALJ found that Plaintiff suffered from a history of seizures and depressive disorder, and that he has borderline intellectual functioning.  (Id.).  The ALJ considered these impairments "severe."  (Id.).

At step three, the ALJ concluded that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR [sic] Part 404, Subpart P,

12

Appendix 1 (20 CFR [sic] 416.920(d), 416.925 and 416.926)." (Id.).
There was no showing that Plaintiff's seizures are not controllable with
appropriate medication. (AR 28). Moreover, Plaintiff has been off
medication for years and has not had a seizure since 2000. (Id.). The
ALJ also relied Plaintiff's own testimony: "Further, the claimant's
ability to perform such work after his alleged onset date casts . . .
doubt upon . . . disability throughout the period." (Id.).

At step four, the ALJ determined that Plaintiff has a RFC to
perform medium work, as defined in 20 CFR 416.967(c), with limitations.
(AR 27). Plaintiff's RFC to perform medium work is subject to
limitations the ALJ adopted from Dr. Townsend's psychological
evaluation. (See id.). Based on Plaintiff's RFC of medium work and the
VE's testimony, the ALJ concluded that Plaintiff could not perform the
requirements of his past relevant work. (Id.).

At step five, the ALJ determined that there are a significant
number of jobs in the local and national economy that an individual with
Plaintiff's age, education, work experience and RFC could perform. (AR
30).

In conclusion, the ALJ found Plaintiff was not disabled as defined
in the Social Security Act. (Id.). Plaintiff could perform medium work
with the following limitations adopted from Dr. Townsend's report:
Plaintiff is "able to perform only simple, repetitive tasks which do not
require time pressure where speed is required" and he is "unable to work
at unprotected heights or near unprotected bodies of water; unable to

operate hazardous machinery; and unable to drive motor vehicles." (AR 27).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

\\

\\

\\

14

## VII.

### DISCUSSION

Plaintiff disputes the ALJ's findings specifically as they related to his mental abilities.  Plaintiff argues that the record lacks substantial evidence to support the determination that he is not disabled. (Jt. Stip. at 3).  To the contrary, although there is some past evidence of physical impairment, the record lacks evidence of mental impairment from the alleged onset date March 1, 1999.  Evidence of some mental limitations finally surfaced on July 17, 2007, in the form of a psychological evaluation performed by examining psychologist, Dr. Townsend.  (See AR 133-143).

**A.   Substantial Evidence Supports The ALJ's Assessment of Plaintiff's RFC**

Plaintiff contends that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence. (Jt. Stip. at 4). Specifically, Plaintiff disputes the ALJ conclusions regarding Plaintiff's mental capacity. (Id.).  Plaintiff maintains there is insubstantial evidence because the ALJ failed to provide specific and legitimate reasons for rejecting portions of Dr. Townsend's report.  (Id. at 2).  This Court disagrees.

Dr. Townsend's findings are discussed above in section III.B.1. Dr. Townsend's relationship with Plaintiff was limited, as Dr. Townsend was not a treating psychologist, but rather examined Plaintiff solely for the purposes of the administrative proceedings.  (AR 133-43).

During Plaintiff's examination, Dr. Townsend observed that Plaintiff was generally cooperative and pleasant. (AR 140). He was willing and able to answer questions and follow instructions. (Id.). Dr. Townsend submitted her observations in a Summary Conclusions report, which detailed the results of various mental capacity tests administered to Plaintiff. (See AR 133-39). Appended to the observational report was a Summary Report. (AR 139). The Summary Report is Dr. Townsend's expert interpretation of the psychological tests, including the mental capacity tests, that she conducted during her examination of Plaintiff. (See AR 139-43).

There exists a hierarchy of physicians reports and opinions in social security cases and their weight is measured accordingly. In general, "the opinions of examining physicians are afforded more weight than those of non-examining physicians and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); see also 20 C.F.R. § 404.1527. The ALJ "is responsible for resolving conflicts in medical testimony" and "determining credibility." Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by independent clinical findings. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004).

The examining physician's opinion is entitled to the same standard of review against non-treating, non-examining physicians. See Orn, 495 F.3d at 631; Andrews, 53 F.3d at 1043. The opinion of an examining

16

physician is, in turn entitled to greater weight than the opinion of a non-examining physician.  See Orn, 495 F.3d at 631.  Just as a treating physician's opinion may only be rejected for specific and legitimate reasons, the opinion of an examining physician, even if contradicted by another doctor, may "only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Andrews, 53 F.3d at 1043; see also Orn, 495 F.3d at 632 (using the Andrews standard to determine the validity of the ALJ's rejection of a treating physician's findings).

Here, the ALJ concluded that Plaintiff has a history of seizures, a depressive disorder, and borderline intellectual functioning, but Plaintiff can still perform "at least simple, repetitive tasks which 'do not involve time pressure where speed is not required.'" (AR 29).  The ALJ adopted this assessment from Dr. Townsend's narrative Summary Report.  (AR 29, 143).  Plaintiff argues that some of Dr. Townsend's raw data indicates some moderate mental limitations.  Plaintiff contends that these moderate mental limitations conflict with Dr. Townsend's narrative conclusion in the Summary Report.  (Jt. Stip. at 4).  To the extent that there is a conflict within Dr. Townsend's assessment of Plaintiff, Plaintiff further argues ALJ cannot disregard the conflicting data without providing legitimate and specific reasons for so doing.  (Id.).

The ALJ's finding that Plaintiff has a history of seizures, a depressive disorder, and borderline intellectual functioning, but can still perform "at least simple, repetitive tasks which 'do not involve

17

time pressure where speed is not required'" is an acknowledged adoption of Dr. Townsend's narrative report. (See AR 29). In adopting the narrative report, the ALJ further reasoned that "[t]his opinion seems well-supported overall." (Id.). Although Plaintiff faults the ALJ for not specifically mentioning Dr. Townsend's data indicating Plaintiff's limited ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, complete a normal work week without interruptions from psychologically based symptoms, set realistic goals or make plans independently of others, and travel to unfamiliar places, Plaintiff fails to show that these omissions were material. The check-off boxes concerning Plaintiff's insight, judgment, and memory are part of the "Mental Status" section of the form Dr. Townsend completed. (See AR 133-38). These observations formed the basis upon which Dr. Townsend made her narrative assessment and they were presumably factored into Dr. Townsend's ultimate diagnosis, adopted by the ALJ. (See AR 133-43).

To the extent that any of the raw data appears to conflict with Dr. Townsend's final report, Dr. Townsend reconciled this discrepancy when she recognized in her Summary Report that despite the moderate mental limitations initially observed, she believed Plaintiff could perform "simple repetitive tasks" and "complete a full work day if the job did not involve time pressures or speed." (AR 143). Moreover, where evidence is susceptible to more than one rational interpretation, the ALJ may resolve the conflict. Vasquez, 547 F.3d at 1104; See Morgan v. Commissioner, 169 F.3d 595, 601 (9th Cir. 1998) ("[W]hen evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.") (interpreting Andrews, 53 F.3d at 1041 and

Magallanes, 881 F.2d at 750).  Here, the data from the check-off boxes was subject to multiple reasonable interpretations.  Dr. Townsend's conclusions, based on her own observations and data, were a rational interpretation of the evidence, which included Plaintiff's moderate mental limits.  Therefore, the ALJ properly adopted Dr. Townsend's professional opinions and conclusions.  To the extent any of Dr. Townsend's underlying observations conflicted with her ultimate recommendations, the ALJ was entitled to resolve that conflict.

The ALJ gave specific reasons for adopting Dr. Townsend's conclusions, which effectively discount some of the "Mental Status" observations.  The ALJ remarked in her opinion that Dr. Townsend's summary report was thorough and "well supported by the overall record." (AR 29).  Also, the ALJ noted that the record showed Plaintiff was "limited by physical factors rather than any mental impairment." (AR 29).  Moreover, the ALJ did not find Plaintiff entirely credible. (See AR 28).

The ALJ also considered the complete absence of any treatment records and the inconsistencies in Plaintiff's testimony in reaching the non-disability determination.  The ALJ noted that Plaintiff worked for his mother, doing housecleaning and other care, after the alleged onset date. (Id.).  Although Plaintiff testified that he provided very brief care in exchange for income, the ALJ believed, "such an allegation seems somewhat doubtful in consideration of the likely duties involved." (Id.).  Furthermore, Plaintiff's ability to perform housework and care for his mother after his alleged onset date "casts a measure of doubt upon the credibility of his complaints of disability throughout the

period at issue." (Id.). The record lacks any documentation of psychological treatment or hospitalization, or psychotropic medications. (See AR 139). Finally, Plaintiff has no treating physician or psychologist. He never sought treatment for the mental conditions or "seizure" impairment upon which his claim relies. (AR 29, 139). The ALJ properly relied on these factors to conclude that Plaintiff's limitations were not as severe as he alleged.

Consequently, in determining Plaintiff's RFC, the ALJ correctly relied on three examining physicians' opinions, the opinions of Dr. Maze, Dr. Bayar, and Dr. Townsend. (AR 28-29). Of the three doctors, Dr. Townsend was the only psychologist to examine Plaintiff. (AR 29). Her final Summary Report was the only psychological and mental assessment of Plaintiff. (Id.). No doctor contradicted Dr. Townsend's findings. In addition, Dr. Townsend's narrative Summary Report was quite lengthy, detailed, and thorough. (See AR 29, 139-43). She adequately based her conclusions on independent clinical findings. (See AR 139-43; See also Batson 359 F.3d at 1195).

Although the ALJ did not specifically address each and every category in which Plaintiff had moderate limitations, none of these moderate limitations undermine the ALJ's final RFC determination. Moreover, when the ALJ proposed hypothetical questions to the VE, she took care to include the specific limitations identified in Dr. Townsend's Summary Report. (See, e.g., AR 156). The ALJ also referred to Plaintiff's special limitations in her administrative decision. (AR 30 ("[T]he claimant's ability to perform all . . . the requirements of this level of work has been impeded by additional limitations.")). When

the ALJ questioned the VE about the availability of jobs for an individual with Plaintiff's abilities, the VE responded that such jobs existed in significant numbers in both the local and national economies. (AR 156).

The ALJ properly relied on Dr. Townsend's detailed report.  As a result, sufficient evidence existed to support the RFC as an accurate statement of Plaintiff's abilities and limitations.   No remand is required.

**B.**  **Even If The ALJ Erred By Rejecting Portions Of Dr. Townsend's Summary Report, It Was Harmless Error**

Assuming arguendo that the ALJ should have given more weight to portions of Dr. Townsend's report, any such error by the ALJ was harmless error in light of the overall record.  Carmickle v. Comm'r of the Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

As discussed above in section VII.A, the record as a whole supports the ALJ's finding of non-disability.  Plaintiff worked after the alleged onset of his disability, he appeared coherent and cooperative, and he never sought treatment or hospitalization for alleged mental problems. (See AR 24-31, 133-43).  According to Plaintiff's testimony and his medical examinations, the ALJ considered that "claimant's activities of daily living seem to have been limited by physical factors rather than any mental impairment."  (AR 29).  Indeed, Plaintiff's own testimony

reflects such a conclusion.[8]   The record also shows that the ALJ did take Plaintiff's specific limits into account when determining his RFC to complete light work. (AR 30).   The ALJ considered Plaintiff's limitations, yet she still properly found Plaintiff was not disabled.

Considering the remainder of the evidence, any error the ALJ may have made by failing to enumerate each of Dr. Townsend's specific findings and provide a reason for discounting it, would not have sufficiently altered the ALJ's conclusions regarding Plaintiff's RFC. No remand is required.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

_____

[8]   Where the ALJ asked Plaintiff, "[W]hat's your biggest problem now do you think that's keeping you from working?"   Plaintiff responded, "The pain, the headaches, the pain in the sides and sometimes off and on dizzy spells."   (AR 155).

**VIII.**

**CONCLUSION**

The ALJ properly considered the observations and opinions of Dr. Townsend, Plaintiff's examining physician.  The ALJ properly determined Plaintiff's RFC and his ability to perform light work subject to limitation.  The ALJ's ultimate finding that Plaintiff was not disabled under the statute is supported by sufficient evidence and absent material legal error.  Accordingly, Plaintiff's contentions do not warrant remand.

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 19, 2010.                                    /s/
                                    _____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

_____

[9]     This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

23